# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# SHREVEPORT DIVISION

| | |
|---|---|
| ALEX MATTHEW HAMMOND | CIVIL ACTION NO. 21-3727-P |
| VERSUS | JUDGE DOUGHTY |
| LOUIS HAMILTON, ET AL. | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

## STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Alex Matthew Hammond ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on October 21, 2021. Plaintiff is incarcerated at the David Wade Correctional Center in Homer, Louisiana, and claims his civil rights were violated by prison officials. He names Louis Hamilton, Bruce Young, Vincent Coleman, and James M. LeBlanc as defendants.

On August 29, 2020, Plaintiff was escorted to the yard area of the N-4 unit. He claims Defendant Hamilton harassed him about old tattoos. Defendant Hamilton called Captain Kimball to the unit. He claims Captain Kimball photographed his tattoos and deemed them to be old tattoos. He claims Defendant Hamilton was not satisfied with Captain Kimball's finding. He claims Defendant Hamilton became vulgar, disrespectful, and threatening toward him until Sgt. Walton escorted him back to the N-3 unit.

Plaintiff claims that on September 11, 2020, he was transferred from the N-3 unit to the N-4 unit without cause. He claims Defendant Hamilton is assigned to the N-4 unit and when he saw Plaintiff, he threatened him even though Plaintiff told him that he did not want any trouble.

Plaintiff claims that on September 12, 2020, he noticed hair and a dust bunny in his lunch meal. He brought the matter to Defendant Hamilton's attention. He claims Defendant Hamilton told him that he would be alright, and he could either eat the meal or not eat it. Plaintiff did not eat his lunch meal. He talked to Lt. Pietch and Cpt. Kimball about Defendant Hamilton's misconduct toward him. He claims the issue was not resolved.

Plaintiff claims that on September 16, 2020, he placed two personal letters in his cell tray hatch to be placed in the outgoing mailbox for the N-4 Unit. He claims Defendant Hamilton refused to pick up his mail. Plaintiff then asked Sgt. Burns, who was conducting pill call, to place his mail in the mailbox and he did. He explained to Sgt. Burns why he did not trust Defendant Hamilton and the misconduct Defendant Hamilton showed toward him.

Plaintiff claims that on September 27, 2020, Defendant Hamilton falsified a rule violation report against him. He claims he was placed in a strip cell for 24 hours, charged a restitution fee, and lost 12 weeks of yard and recreation. Plaintiff claims the false report was filed against him in retaliation for his complaining to prison administrators about the misconduct of Defendant Hamilton. Plaintiff claims the false report violated his right to due process.

Plaintiff claims that on October 6, 2020, Defendant Hamilton issued trays for the last meal of the day. He noticed hair in his food and reported the matter to Defendant Hamilton. He claims Defendant Hamilton told him that he would be alright and left the tier. Plaintiff did not eat his meal.

Plaintiff claims that on October 15, 2020, Defendant Hamilton issued the second meal. He noticed his meal was the only one that had pineapples as a dessert. He claims all the other meal trays had bread pudding as a dessert. He did not eat his meal.

Plaintiff claims that on October 23, 2020, Defendant Hamilton only put juice in his cup. He claims he has told Defendant Hamilton numerous times that he does not drink juice. He claims he asked for coffee and Defendant Hamilton told him there was no more coffee. Plaintiff then asked Defendant Hamilton to call his supervisors so he could talk to them about his actions toward him. He claims Defendant Hamilton refused to call them. He claims that after Defendant Hamilton picked up the utensils, Lt. Pietch and Cpt. Elmore were called to the housing unit.

Plaintiff claims that upon Lt. Pietch's first order, he relinquished his utensils. He claims Lt. Pietch and Cpt. Elmore then questioned him. He explained that Defendant Hamilton constantly harassed him. He claims Lt. Pietch and Cpt. Elmore agreed to discuss the matter with Defendant Hamilton and advised him to be calm and trust them.

Plaintiff claims that after Lt. Pietch and Cpt. Elmore spoke to Defendant Hamilton, he called Defendant Bruce Young to the unit. He claims Defendant Young questioned him and he explained that Defendant Hamilton constantly harassed him. He claims Defendant

Young then placed him on food loaf for seven days without explanation or a rule violation report. Plaintiff claims this was an act of retaliation by Defendant Young and Defendant Hamilton.

Plaintiff claims that on October 28, 2020, Defendant Col. Vincent Coleman made rounds on his unit. He claims he stopped Defendant Coleman and told him that Defendant Hamilton and Defendant Young harassed him and retaliated against him because he attempted to report their misconduct toward him. He claims Defendant Coleman told him to stay out of trouble and he would see what he could do.

Plaintiff claims that on October 29, 2020, Warden Beard and Warden Mays made rounds on his tier. He claims he stopped Warden Mays and told him about the misconduct of Defendant Hamilton and Defendant Young. He claims Warden Mays told him to stay out of trouble and to not get written up.

Plaintiff claims that on November 11, 2020, he wrote a grievance regarding Defendant Hamilton and Defendant Young placing him on alternate food service without due process of law. He submitted this grievance on December 2, 2020. On December 7, 2020, this grievance was placed on backlog. On June 14, 2021, this grievance was accepted at the First Step. Plaintiff claims that on July 13, 2021, Defendant Coleman falsified the First Step response when he stated he had reviewed the rule violation report because there was no rule violation report. Plaintiff's grievance was denied at the First Step. On July 18, 2021, Plaintiff requested to proceed to the Second Step. On August 17, 2021, Plaintiff's request for relief was denied at the Second Step by James LeBlanc.

Plaintiff claims that on November 12, 2020, he wrote a grievance regarding Defendant Hamilton and Defendant Young harassing him and retaliating against him. He submitted this grievance on November 13, 2020. On November 19, 2020, this grievance was placed on backlog. On March 1, 2021, this grievance was accepted, and Plaintiff was notified that he would be issued a response within 40 days. Plaintiff claims that on April 16, 2021, he had not received a response, so he wrote a request for a status update. He claims that on April 22, 2021, his grievance was deemed to be without merit by the First Step Respondent Defendant Coleman. On April 25, 2021, Plaintiff requested to proceed to the Second Step and attached his reasons. On June 2, 2021, Plaintiff's grievance was denied at the Second Step by Defendant James LeBlanc.

Plaintiff claims top officials failed to properly investigate violations of the First and Fourteenth Amendments and reprimand or discipline the officers involved even when they were aware of complaints. He claims the retaliatory acts against him were condoned by the top officials.

Plaintiff claims he suffers with emotional distress and despair. He claims he has been diagnosed with severe depression. He claims he feels insecure, unsafe, paranoid, and vulnerable to attack. He claims the dosage of his medication had to be increased twice. He claims he does not trust the DWCC Administration and cannot confide in them.

Accordingly, Plaintiff seeks a jury trial, declaratory judgment, injunctive relief, and monetary compensation, punitive and general damages, and any other relief to which he is entitled.

## LAW AND ANALYSIS

**Harassment**

Plaintiff claims Defendant Hamilton constantly harassed him. He claims that on August 29, 2020, Defendant Hamilton harassed him and was vulgar, disrespectful and threatening toward him. Plaintiff claims that on September 11, 2020, Defendant Hamilton threatened him. The Eighth Amendment proscribes prison officials' wanton infliction of unnecessary pain upon a prisoner. It has been held that verbal abuse and harassment do not constitute cruel and unusual punishment as contemplated by the Eighth Amendment and allegations of such, without more, are insufficient grounds for relief under 42 U.S.C. § 1983. Collins v. Cundy, 603 F.2d 825 (10th Cir. 1979); Ellingburg v. Lucas, 518 F.2d 1196 (8th Cir. 1975). Furthermore, the Fifth Circuit Court of Appeals has held that "mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations." Siglar v. Hightower, 112 F.3rd 191, 193 (5th Cir.1997); Lynch v Cannatella, 810 F.2d 1363, 1376 (5th Cir. 1987) citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir.), cert. den., 464 U.S. 998, 104 S.Ct. 499, 78 L.Ed.2d 691 (1983). Even if Plaintiff has been subjected to verbal abuse and threats as alleged, these claims do not amount to harm sufficient to constitute a constitutional violation.

Accordingly, Plaintiff's claims of verbal abuse and harassment should be dismissed as frivolous.

**Classification**

Plaintiff complains that on September 11, 2020, he was transferred from the N-3 unit to the N-4 unit without cause. This is not a claim this court can resolve. Federal courts

should not, under the guise of enforcing constitutional standards, assume the superintendence of state prison administration. See Jones v. Diamond, 636 F.2d 1364, 1368 (5th Cir. 1981) (en banc) (overruled on other grounds). Thus, this court accords state prison administrators wide-ranging deference to adopt and to execute policies and practices that are needed to maintain and preserve order, discipline and security in prison. See Bell v. Wolfish, 441 U.S. 520, 547 (1979).

The classification of prisoners is such a practice that is left to the discretion of prison officials. See McCord v. Maggio, 910 F.2d 1248, 1250 (5th Cir. 1990). "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status'." McCord, 910 F.2d at 1250 (quoting Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983)).

In Louisiana, the classification of prisoners is the duty of the Department of Corrections and an inmate, such as Plaintiff, has no right to a particular classification. In addition, "speculative, collateral consequences of prison administrative decisions do not create constitutionally protected liberty interests." Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995) (citing Meachum v. Fano, 427 U.S. 215, 299 n.8, 96 S. Ct. 2532, 2540 n.8 (1976)).

Accordingly, Plaintiff's claim regarding his classification is frivolous because it lacks an arguable basis in law and in fact, and should be dismissed with prejudice as frivolous.

**Conditions**

Plaintiff filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law.  The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged unconstitutional conditions of confinement is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates.  See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

An Eighth Amendment claim has two required components. See Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991).  First, the deprivation alleged must be sufficiently serious. See id., 111 S. Ct. at 2324.  "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave" to constitute cruel and unusual punishment. Id., 111 S. Ct. at 2324 (quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)).  Second, the prison official must have acted with a sufficiently culpable state of mind. See id. at 305, 111 S. Ct. at 2328; Farmer, 511 U.S. at 838, 114 S. Ct. at 1979.  In prison condition of confinement cases, that state of mind is deliberate indifference, which the Supreme Court defined as knowing of and disregarding an excessive risk to inmate health or safety.  See id., 114 S. Ct. at 1979.  However, mere neglect and/or negligence do not constitute deliberate indifference.   See Fielder v. Bosshard, 590 F.2d 105, 107 (5th Cir. 1997).

Furthermore, this court should consider the duration and the totality of the specific circumstances that constituted the conditions of Plaintiff's confinement. Palmer v. Johnson, 193 F.3d 346 (5th Cir. 1999).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding that the defendants' conduct was sufficiently harmful enough to deprive him of life's basic necessities. See Wilson, 501 U.S. at 298, 111 S. Ct. at 2324.

Plaintiff claims that on September 12, 2020 he noticed hair and a dust bunny in his lunch meal. He claims that on October 6, 2020, he noticed hair in his food. Plaintiff claims that on October 15, 2020, his meal was the only one that had pineapples for dessert instead of bread pudding. He claims that on October 23, 2020, Defendant Hamilton put juice in his cup instead of coffee.

"The fact that the food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." Hyder v. Perez, 85 F.3d 624 (5th Cir. 1996). While a "single incident of food poisoning or finding a foreign object in food does not constitute a violation of the constitutional rights of the prisoner affected[,]" evidence "of frequent or regular injurious incidents of foreign objects in food, on the other hand, raises what otherwise might be merely isolated negligent behavior to the level of a constitutional violation." Green v. Atkinson, 623 F.3d 278, 281 (5th Cir. 2010).

Plaintiff does not allege that Defendant Hamilton knowingly harmed him, intentionally harmed him, or was deliberately indifferent to a substantial risk of serious harm. Nor does he allege that there were frequent or regular injurious incidents of foreign

Page **9** of **16**

objects in the food or tainted ingredients in the food. At best, Plaintiff's claim sounds in negligence, but negligence is not actionable under Section 1983.6 "The conditions described by plaintiff, while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation." Green v. Gusman, 15-1738, 2016WL3033541, (E.D. La.May 6, 2016). The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Id. (citing Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982)). The courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Id. Thus, Plaintiff's claims have failed to satisfy the first component of an Eighth Amendment claim.

Accordingly, Plaintiff's claims regarding the conditions of his confinement should be dismissed with prejudice as frivolous.

**Mail**

Plaintiff claims that on September 16, 2020, Defendant Hamilton refused to pick of his two letters that he placed in his cell tray hatch to be placed in the outgoing mail. He admits that Sgt. Burns did pick up his letters and placed them in the outgoing mail.

Plaintiff has failed to show that the alleged acts of wrongdoing by Defendant Hamilton resulted in any injury to his constitutional rights.

Accordingly, Plaintiff's claim regarding his mail should be dismissed with prejudice as frivolous.

**False Rule Violation Report**

Plaintiff claims that on September 27, 2020, Defendant Hamilton falsified a rule violation report against him.  Plaintiff has no right which protects him from being charged with a disciplinary offense.  This is true regardless of the truth of the initial report.  Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984); Cardine v. Tucker, 23 F.3d 406 (Table), 1994 U.S. App. LEXIS 17566 (6th Cir. 1994).  Accordingly, in the instant case, even if the actions of Defendants resulted in false disciplinary action being taken against him, Plaintiff's claim against them is not cognizable because he has no constitutional protection from being wrongly charged with a disciplinary offense.

Accordingly, Plaintiff claim regarding a false disciplinary report should be dismissed with prejudice as frivolous.

**Due Process in the Disciplinary Process**

Plaintiff complains he was denied due process because of the alleged false disciplinary report.  He claims he was placed in a strip cell for 24 hours, charged a restitution fee, and lost 12 weeks of yard and recreation.  Plaintiff also claims he was placed on food loaf for seven days without explanation or a rule violation report.  To the extent Plaintiff contends he was punished without due process, these claims are not cognizable.

In Sandin v. Connor, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Supreme Court clarified when due process protections attach to the prison disciplinary process.  The Supreme Court held that the Due Process Clause of the Fourteenth Amendment does not afford an inmate a protected liberty interest that would entitle the

inmate to procedural protections in the disciplinary process when the maximum sanction the inmate could receive does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest" and the duration of the prisoner's original sentence is not affected. Id. 132 L.Ed.2d at 431. Under the guidance provided by Sandin, the Fifth Circuit has held that as a general rule, only sanctions which result in loss of good time credit or which otherwise directly and adversely affect release will implicate a constitutionally protected liberty interest. Orellana v. Kyle, 65 F.3d 29, 31-32 (5th Cir. 1995). Moreover, in commenting on Sandin, the Fifth Circuit noted that liberty interests which are protected by the Due Process Clause are generally limited to actions which affect the quantity of time rather than the quality of time served by a prisoner. Madison v. Parker, 104 F.3d 765, 767 (5th Cir. 1997) citing Sandin, 115 S.Ct. at 2297.

Plaintiff does not allege that the disciplinary actions affected the duration of his sentence. To the contrary, Plaintiff's allegations concern strip cell for 24 hours, a restitution fee, 12 weeks loss of yard and recreation, and seven days of food loaf which are far from "extraordinary." This court finds that under Sandin, Orellana and Madison, Plaintiff's punishment does not constitute the type of atypical punishment that presents a significant deprivation which would implicate due process concerns.

Accordingly, Plaintiff's claims that he was punished without due process of law are without merit and should be dismissed with prejudice as frivolous.

**Retaliation**

Plaintiff claims Defendant Hamilton falsified a rule violation report against him because he complained to prison administrators about his misconduct. He also claims he

was placed on food loaf as an act of retaliation by Defendant Young and Defendant Hamilton. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive, the complained of incident–the rule violation report and placement on food loaf-would not have occurred. <u>Woods v. Smith</u>, 60 F.3d 1161 (5th Cir. 1995), citing <u>Mt. Healthy City School Board District Bd. Of Education v. Doyle</u>, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

As shown above, Plaintiff's constitutional rights have not been shown to have been violated by the alleged false rule violation report and placement on food loaf. Moreover, the retaliatory motives alleged by Plaintiff are entirely conclusory as he provides no specific allegations showing that "but for" this motive the rule violation report would not have been written and he would not have been placed on food loaf.

Accordingly, Plaintiff's claims regarding retaliation should be dismissed with prejudice as frivolous.

**Administrative Remedy Procedure**

Plaintiff claims that on November 11, 2020, he filed a grievance regarding being placed on alternate food service without due process of law. Plaintiff claims that on July 13, 2021, Defendant Coleman falsified the First Step Response when he stated he reviewed the rule violation report because there was no rule violation report. Plaintiff claims that on November 13, 2021, he filed a grievance regarding Defendant Hamilton and Defendant Young harassing him and retaliating against him. He claims the grievance was denied at both the first and second steps.

Inmates do not have a constitutionally protected right to a prison administrative grievance procedure. See Oladipupo v. Austin, et al., 104 F.Supp.2d 626 (W.D. La. 2000); Brown v. Dodson, et al., 863 F. Supp. 284 (W.D. Va. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). A prison official's failure to comply with a state administrative grievance procedure is not actionable under Section 1983 because a state administrative grievance procedure does not confer any substantive constitutional right upon prison inmates. Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231. Furthermore, state administrative grievance procedures are separate and distinct from state and federal legal procedures. Thus, a prison official's failure to comply with state administrative grievance procedures does not compromise an inmate's right of access to the courts. Flick, supra. Thus, insofar as Plaintiff alleges that the Defendants failed to comply with the prison administrative grievance procedure, those allegations, standing alone, do not provide an arguable basis for recovery under Section 1983.

Accordingly, these claims regarding the administrative remedy procedure should be dismissed with prejudice as frivolous.

**CONCLUSION**

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely

broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

Accordingly;

**IT IS RECOMMENDED** that Plaintiff's civil rights complaint be **DISMISSED WITH PREJUDICE** as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 8th day of September, 2022.

Mark L. Hornsby
U.S. Magistrate Judge